**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**WALTERLEY ROBSON MARTINS,**

                                        **Petitioner,**

    **vs.**

**FREDERICK J. AKSHAR II,** *in his official*
*capacity as Sheriff, Broome County*
*Correctional Facility*; **JUDITH ALMODOVAR,**
*in her official capacity as Acting New York*
*Field Office Director, U.S. Immigration & Customs*
*Enforcement*; **KRISTI NOEM,** *in her official*
*capacity as Secretary, U.S. Department of*
*Homeland Security*; **TODD M. LYONS,** *in his official*
*capacity as Acting Director, Immigration & Customs*
*Enforcement*; **and PAMELA BONDI,** *in her official*
*capacity as Attorney General, U.S. Department*
*of Justice,*

                                        **Respondents.**

**9:26-CV-95**
**(MAD)**

---

**APPEARANCES:**

**LAW OFFICES OF**
**MICHAEL Z. GOLDMAN**
100 Church Street, Suite 800
New York, New York 10007
Attorney for Petitioner

**BROOME COUNTY**
**ATTORNEY'S OFFICE**
Broome County Office Building
60 Hawley Street
P.O. Box 1766
Binghamton, New York 13902
Attorney for Respondent Akshar

**OFFICE OF THE UNITED**
**STATES ATTORNEY**
445 Broadway, Room 218
Albany, New York 12207

**OF COUNSEL:**

**MICHAEL Z. GOLDMAN, ESQ.**

**JOSHUA T. TERRELL, ESQ.**

**CHRISTOPHER ROBERT MORAN,**
**AUSA**
**KAREN FOLSTER LESPERANCE,**
**AUSA**

1

Attorneys for Respondents
Almodovar, Noem, Lyons,
and Bondi

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On January 20, 2026, Petitioner Walterley Robson Martins filed a petition for writ of habeas corpus, alleging that U.S. Immigration and Customs Enforcement ("ICE") detained him without due process. Dkt. No. 1. The petition names one Broome County, New York official— Sheriff Frederick J. Akshar II—and four federal officials—ICE Acting New York Field Office Director Judith Almodovar, Department of Homeland Security ("DHS") Secretary Kristi Noem, Acting ICE Director Todd M. Lyons, and U.S. Attorney General Pamela Bondi—as Respondents. *Id.* Petitioner also sought a temporary restraining order barring Respondents from relocating him outside the Northern District of New York while his petition is pending, Dkt. No. 2 at 2-3, which this Court granted, Dkt. No. 3 at 2.

On January 22, 2026, this Court ordered Respondents to file a response and show cause as to why the petition should not be granted. *Id.* at 1. The Court also scheduled a show cause hearing on the matter. *Id.* Respondents filed their responses to the petition on January 28, 2026, Dkt. Nos. 12, 13, and Petitioner filed a reply on January 29, 2026, Dkt. No. 14. The show cause hearing occurred on February 2, 2026.

## II. BACKGROUND

2

According to the petition, Petitioner entered the United States undocumented in April 2021 and has remained in the country since that time. Dkt. No. 1 at 2, ¶ 1.[1] He is a Brazilian citizen, Dkt. No. 13-2 at 1, and does not have U.S. citizenship, Dkt. No. 1 at 5, ¶ 19. Petitioner acknowledges that "[t]he crucial facts are undisputed[,]" and admits that he was initially detained upon entering the United States. Dkt. No. 14 at 3. Because Petitioner lacked valid entry documents, U.S. Customs and Border Protection ("CBP") processed him for expedited removal. Dkt. No. 13 at 5. However, because Petitioner "claimed a fear of returning to Brazil[,]" an asylum officer conducted a "credible fear interview" on June 28, 2021. *Id.* Based on the interview, the asylum officer found that Petitioner had a credible fear of torture upon returning to Brazil. *Id.*; *see also* Dkt. No. 13-2 at 11. "On June 30, 2021, Petitioner was issued a [n]otice to [a]ppear," which is the document used to commence removal proceedings, charging him as subject to removal . . . ." Dkt. No. 13 at 5. Thereafter, in August 2021, "Petitioner was released from DHS custody on parole." *Id.* at 6; *see also* Dkt. No. 14 at 3. According to the record,[2] Petitioner's parole authorization was valid for one year, and ICE retained discretion to extend the parole period or end it early. Dkt. No. 13-2 at 26. In December 2024, an immigration judge denied Petitioner's asylum application and ordered his removal to Brazil. Dkt. No. 13 at 6. Petitioner appealed the decision, and the appeal is pending. *Id.*

Approximately one year after the asylum application was denied, CBP detained Petitioner during a traffic stop in Jefferson County, New York. *Id.* On or about December 17, 2025, CBP transferred Petitioner to ICE custody. *Id.* According to the petition, ICE detained Petitioner

---

[1] The petition's paragraph numbering restarts at Plaintiff's substantive claims, so the Court notes both the page number and paragraph number for each citation.

[2] The record contains a manifest from the Broome County Correctional Facility, Dkt. No. 12-1, the declaration of Deportation Officer Matthew Mulvey, Dkt. No. 13-1, and a series of DHS documents pertaining to Petitioner's status in the United States, Dkt. No. 13-2.

"without an individualized assessment that he posed a flight risk or a danger to the community and, therefore, without due process." Dkt. No. 1 at 2, ¶ 2. Petitioner is currently incarcerated at the Broome County Correctional Facility in Binghamton, New York. *Id.* at 2, ¶ 3. Petitioner "seeks immediate release from custody, or, in the alternative, the opportunity for a bond hearing." *Id.* at 2. Petitioner has no criminal history. Dkt. No. 13-2 at 37.

The petition enumerates three grounds for relief. Dkt. No. 1. Count One alleges a violation of Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution. *See id.* at 6-7, ¶¶ 1-7. Count Two alleges a violation of Petitioner's substantive due process rights under the Fifth Amendment. *Id.* at 7-8, ¶¶ 8-12. Count Three asserts a claim for relief under the Administrative Procedure Act. *Id.* at 8, ¶¶ 13-15.

In response to the petition, Respondent Akshar filed a short answer admitting that Petitioner is incarcerated at Broome County Correctional Facility by order of a Border Patrol agent. Dkt. No. 12 at 2; Dkt. No. 12-1 at 3. The remaining four Respondents, who are all federal government officials, filed an opposition brief. Dkt. No. 13. Those Respondents dispute the statutory authority for Petitioner's re-detainment and argue that the detainment is lawful. *Id.* at 6-10, 12-15. They also argue that the applicable statute does not entitle Petitioner to a bond hearing. *Id.* at 10-11.

### III. DISCUSSION

**A.    Legal Standard**

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Veletanga v. Noem*, No. 25-CV-9211, 2025 WL 3751865, *2 (S.D.N.Y. Dec. 26, 2025) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4)); *see also*

4

28 U.S.C. § 2241(c)(3); *see Padilla Molina v. DeLeon*, No. 25-CV-06526, 2025 WL 3718728, *2 (E.D.N.Y. Dec. 23, 2025) (citations omitted).  "This jurisdiction includes habeas petitions filed by immigration detainees[,]" *Padilla Molina*, 2025 WL 3718728, at *2 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)), including non-citizens, *see R.P.L. v. Maldonado*, No. 25-CV-6886, 2025 WL 3731864, *2 (E.D.N.Y. Dec. 26, 2025) (citation omitted).  "[T]he petitioner 'bears the burden of proving that he is being held contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  *Veletanga*, 2025 WL 3751865, at *2 (quoting *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, *3 (S.D.N.Y. May 26, 2020)); *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

**B.      Statutory Authority for Petitioner's Re-Detainment**

As a preliminary matter, the parties dispute the applicable statutory authority for Petitioner's re-detainment within the Immigration and Nationalization Act.  Respondents contend that 8 U.S.C. § 1225(b)(1)(B)(ii) applies and requires Petitioner's detention.  Dkt. No. 13 at 3-4. That provision refers specifically to asylum interviews and reads as follows: "If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).  Respondents argue that "Petitioner incorrectly assumes that the Government relies on 8 U.S.C. § 1225(b)(2) . . . to justify his detention . . . ."  Dkt. No. 13 at 6.  That section provides in part that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).

5

Petitioner, on the other hand, argues that 8 U.S.C. § 1226(a) applies, and asserts that Respondents have "begun to posit a totally new framework for detention[]" during the last few months.  Dkt. No. 14 at 6.  Under Petitioner's cited provision, "detention is discretionary 'pending a decision on whether the alien is to be removed from the United States.'"  *Padilla Molina*, 2025 WL 3718728, at *2 (quoting 8 U.S.C. § 1226(a)); *see* Dkt. No. 14 at 6.  That statute also entitles detainees "to an individualized custody determination upon arrest and to receive a bond redetermination hearing before an immigration judge upon request."  *Padilla Molina*, 2025 WL 3718728, at *2 (citing 8 C.F.R. §§ 1003.19; 1236.1(c)(8), (d)(1)).  Petitioner contends that in recent months, "federal district courts across the country have outright rejected the position Respondents are now taking."  Dkt. No. 14 at 5 (collecting cases).

### 1.  8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a)

In the Second Circuit and elsewhere, courts have explicitly rejected the proposition that § 1225(b)(2) authorizes detention of noncitizens who have lived in the United States for an extended period.  *See, e.g.*, *Padilla Molina*, 2025 WL 3718728, at *5 ("[T]he Court holds that Section 1225 does not apply to Petitioner, who has been present in the United States for years and so was not 'seeking admission' to this country at the time of his arrest"); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726, *8 (E.D. Pa. Nov. 25, 2025) ("After considering the text and structure of the [statute], longstanding agency practice, Congress's actions, and the canon of constitutional avoidance, the Court finds § 1226 applies to noncitizens . . . who have been residing in the country, and § 1225 is reserved for newly arriving noncitizens"); *Yao v. Almodovar*, No. 25-CV-9982, 2025 WL 3653433, *4 (S.D.N.Y. Dec. 17, 2025) ("[T]here is a clearly superior textual analysis.  It is that noncitizens . . . who [were] intercepted at the border, released on [their] own recognizance pending removal proceedings, and

later detained by ICE . . . are subject to detention under § 1226, not § 1225"); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-CV-5488, 2025 WL 3218243, *1, *4-5 & app. (E.D. Pa. Nov. 18, 2025) (holding that § 1226 applied to a noncitizen who entered the United States in 2023, and collecting more than 200 district court decisions rejecting the respondents' claim that "all non-citizens in this [country] illegally are subject to mandatory detention"); *Gimenez Rivero v. Mina*, No. 6:26-CV-66, 2026 WL 199319, *1, *4 (M.D. Fla. Jan. 26, 2026) (concluding that, in the case of an undocumented individual who had lived here for more than four years after his parents brought him into the United States as a minor, § 1226 was the operative statute); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060-63 (7th Cir. 2025) (favoring the argument that authority to detain undocumented noncitizens already in the United States comes from § 1226 instead of § 1225).

Furthermore, as stated by our sister court in the Southern District of New York, "for ICE to detain a noncitizen under § 1225(b)(2)(A), the noncitizen must be (1) an 'applicant for admission,' (2) who is 'seeking admission,' and (3) whom an immigration officer determines 'is not clearly and beyond a doubt entitled to be admitted.'" *Yao*, 2025 WL 3653433, at *5 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487-88 (S.D.N.Y. 2025)).  All three elements must be met, but here, they are not.  Courts have held that noncitizens physically present in the United States are "not comfortably said to be 'seeking admission[,]'" and are, therefore, not subject to detention under § 1225(b)(2). *Id.*; *see Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, *3-4 (S.D.N.Y. Nov. 4, 2025).  Moreover, even if Petitioner is considered an "applicant for admission" because of his pending asylum claim, courts have recognized that applying for admission and seeking admission have distinct statutory meanings.  *See Yao*, 2025 WL 3653433, at *5 (collecting cases).  Therefore, because Petitioner has lived in the United States for several

years and is not presently "seeking admission" within the meaning of the statute, § 1225(b)(2) does not govern his re-detainment.

### 2.  8 U.S.C. § 1225(b)(1)(B)(ii)

The Court now addresses Respondents' argument that the plethora of district court cases mentioned above are not dispositive of the statutory authority issue.  To that end, Respondents contend that because § 1225(b)(1)(B)(ii) authorizes Petitioner's detention, rather than § 1225(b)(2), his detention is mandatory.  Petitioner does not address this argument in his reply papers.  *See* Dkt. No. 14.  During the show cause hearing, Petitioner took the position that much of the caselaw discussing § 1225(b)(2) also applies to § 1225(b)(1)(B)(ii).

The plain language of § 1225(b)(1)'s title, at first glance, suggests that the provision does not apply to Petitioner at this stage.  It is titled, "Inspection of aliens *arriving* in the United States and certain other aliens *who have not been admitted or paroled*."  8 U.S.C. § 1225(b)(1) (emphasis added).  This title implies that the provision applies to people newly arriving in the United States who are apprehended at the border, but Petitioner's latest detainment occurred after he had resided in the country for more than four years.  Also, the title suggests that the provision applies to individuals who have not been admitted or paroled into the United States, but it is undisputed that Petitioner was released from federal custody on parole while his asylum application was pending before the immigration judge.  Dkt. No. 13 at 6; Dkt. No. 14 at 3.

Notwithstanding, the statute also provides for detention of an undocumented individual "[i]f the [asylum] officer determines at the time of the interview that [the person] has a credible fear of persecution[,]" and states that the person "shall be detained *for further consideration of the application for asylum*."  8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added).  Thus, the statute's plain text suggests that Respondents had the opportunity to detain Petitioner at the time of the asylum

officer's "credible fear" determination.  *See Rashid v. Trump*, No. 2:25-CV-732, 2025 WL 3210955, *5 (D. Vt. Oct. 27, 2025) ("[O]nly by looking to § 1225(b)(1)(B)(ii) can one learn that, if an applicant passes the credible fear interview, they should receive further review of their asylum application—and remain in detention in the meantime").  Whether Respondents retain that authority now, after Petitioner's release on parole and the immigration judge's subsequent denial of his asylum application, is less clear.

Importantly, although Petitioner's initial asylum application is no longer pending, his appeal is.  The Supreme Court has stated that "[§] 1225(b)(1) aliens are detained for 'further consideration of the application for asylum[]' . . . .  Once those proceedings end, detention under § 1225(b) must end as well." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  More specifically, the Supreme Court determined that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id.* at 302.

Courts from several circuits have considered whether a pending asylum appeal means the proceedings have not "ended" for purposes of § 1225(b), and "concluded that detention remains mandatory throughout the appeal process." *Rashid*, 2025 WL 3210955, at *6 (citing *Bermudez Paiz v. Decker*, No. 18-CV-4759, 2018 WL 6928794, *6 (S.D.N.Y. Dec. 27, 2018) (determining that a noncitizen, whose parole was revoked after he got charged with drug crimes and traffic infractions, and whose asylum appeal was pending, was subject to detention under § 1225(b)(1)(B)(ii)); [3] *Leke v. Hott*, 521 F. Supp. 3d 597, 600-01 (E.D. Va. 2021) (determining that

---

[3] The Court notes that Magistrate Judge Barbara Moses analyzed this issue in a report and recommendation submitted to District Judge Gregory Woods for review, but the habeas corpus petition was withdrawn and the case was closed before Judge Woods issued any subsequent decision.

asylum proceedings for the petitioner, an "arriving alien" in federal custody, had not yet concluded because denial of his asylum application was on appeal at the Fourth Circuit); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 923, 928-29 (W.D. Wash. 2020) (adopting report and recommendation that determined § 1225(b)(1) applied to a petitioner who absconded from parole, and that, although immigration officials had denied the petitioner's asylum application, his pending appeal in the Ninth Circuit meant the proceedings had not yet ended)).  However, there is a lack of consensus among courts on whether a petitioner's earlier parole into the United States negates the Government's detention authority under § 1225(b)(1).  *Compare Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) ("Although Petitioner here was paroled into the United States in 2000 and . . . has been continuously present in the United States since that date, the parties agree . . . that Petitioner remains 'at the threshold of initial entry' for immigration purposes"), *with Ivonin v. Rhoney*, No. 6:25-CV-06673, 2026 WL 199283, *4 (W.D.N.Y. Jan. 26, 2026) ("[W]here a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226").

The Court need not decide whether § 1225(b)(1)(B)(ii) or § 1226 applies, because Petitioner retains certain due process rights.  Therefore, an examination of the petition's merits is necessary, and even if a bond hearing is not statutorily guaranteed, one may still be warranted. *See Rashid*, 2025 WL 3210955, at *16 (ordering a bond hearing despite the application of § 1225(b)(1)(B)(ii) to the petitioner); *Djelassi*, 434 F. Supp. 3d at 923, 932 (same).

Respondents argue in their papers, and reiterated at the show cause hearing, that Petitioner must be "treated for constitutional purposes as if stopped at the border."  Dkt. No. 13 at 9.  For that proposition, Respondents rely on Petitioner's initial detention when he arrived in the United

States in 2021. *Id.*; *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien who tries to enter the country illegally is treated as an 'applicant for admission,' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'") (citations omitted). The Supreme Court has stated that "[t]he rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil." *Thuraissigiam*, 591 U.S. at 139. However, Petitioner did not recently step foot on American soil, but has resided in the United States for nearly five years. As explained, there is a lack of consensus (more recent than *Thuraissigiam*) over whether a person's parole into the United States affects the Government's authority to detain them without a bond hearing. Although this issue is mentioned in *Thuraissigiam*, which cites the Cold-War era Supreme Court case *Shaughnessy v. United States ex rel. v. Mezei*, 345 U.S. 206 (1953), for the proposition that a years-long parole period does not increase a person's right to due process, this Court agrees with the District of Vermont that *Mezei* is distinguishable here due to its historical context. *Mezei*, "decided at the height of the Cold War, explicitly tailored its holding to the national security context . . . ." *Rashid*, 2025 WL 3210955, at *10 (citation and internal quotation marks omitted); *see Mezei*, 345 U.S. at 215-16. The undocumented person in *Mezei* was a recognized security risk; Petitioner is not. While the Court acknowledges Respondents' argument that Petitioner's limited due process rights do not *require* a bond hearing, the Court is satisfied that it may still choose to order one.

## C.      Merits of the Habeas Corpus Petition

The Court now moves to the merits of Petitioner's habeas corpus petition, which focuses primarily on Petitioner's due process rights. Dkt. No. 1. As our sister court in the District of Vermont has summarized, the purported statutory mandate for detention without a bond hearing in § 1225(b)(1)(B)(ii) is still subject to the Supreme Court's procedural due process framework set

11

out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[4]  *See Rashid*, 2025 WL 3210955, at *10.

Petitioner's noncitizen status does not deprive him of such rights, as "'all persons within the

territory of the United States are entitled to the protection' of the Constitution."  *Id.* (quoting

*Zadvydas v. Davis*, 533 U.S. 678, 694 (2001)); *see also Ivonin*, 2026 WL 199283, at *5 ("Once

[the petitioner's] parole expired and he remained in the United States, with no action by the

government to remove him or otherwise take him into custody, the legal fiction treating him as at

the threshold of entry no longer applied").  "That is particularly true for noncitizens like

[Petitioner], who have established a credible fear of persecution and the potential right to remain

in and become citizens of this country."  *Rashid*, 2025 WL 3210955, at *10.

> In *Mathews*, the Supreme Court identified three factors that bear on the constitutional need for procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (quoting *Mathews*, 424 U.S. at 335).  The Court accordingly applies the *Mathews* test to

determine Petitioner's due process remedy, if any.

### 1. *Factor One: Petitioner's Private Interests*

"[T]he private interest affected by the official action is the most significant liberty interest

there is—the interest in being free from imprisonment."  *Rashid*, 2025 WL 3210955, at *11

(quoting *Velasco Lopez*, 978 F.3d at 851); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

---

[4] The Court acknowledges that *Thuraissigiam* is more recent than *Mathews* by several decades. However, *Thuraissigiam* did not discuss the statutes at issue here, and concerned a different step in the asylum process.  Moreover, the undocumented individual was not found to have a credible fear of persecution.  Additionally, numerous cases from the past year have used the *Mathews* analysis to determine the due process rights of immigration detainees.

The Court is cognizant of the possibility that "[i]n the case of an appeal, . . . detention may stretch on indefinitely[,]" and as a result, "the risk of an erroneous deprivation of liberty may become more egregious . . . ." *Rashid*, 2025 WL 3210955, at \*9. In evaluating the constitutionality of prolonged detention, the Second Circuit has looked to factors such as the actual or likely length of detention, whether the government is "primarily responsible[,]" whether the petitioner has a viable "defense to removal[,]" and whether the petitioner's conditions of confinement "are meaningfully different from the conditions experienced by those serving a criminal sentence . . . ." *Id.* at \*10 (citing *Black v. Decker*, 103 F.4th 133, 146 (2d Cir. 2024)). Courts also consider the nature of any crimes that the petitioner has committed. *Black*, 103 F.4th at 146.

Petitioner has been detained for nearly two months. Moreover, with his asylum appeal pending, it is unknown how long he may remain subject to detention. The record is clear that Respondents are responsible for Petitioner's detention, as they apprehended him during a traffic stop despite the earlier decision to parole him into the United States. Dkt. No. 13 at 6; Dkt. No. 14 at 3. These facts weigh in his favor. On the other hand, Petitioner entered this country without proper documentation, and he has not proffered any evidence suggesting his conditions of confinement are meaningfully different from those of criminal detainees at Broome County Correctional Facility. Despite his admittedly unlawful entry, however, the record shows that Petitioner has no other criminal history. Indeed, even during the traffic stop on December 10, 2025, where Petitioner was re-detained, the record contains no indication that Petitioner was committing any other crime, participating in any other crime, or resistant toward officers. *See* Dkt. No. 13-2 at 36-39. According to DHS documentation that Respondents provided, Petitioner was forthright with officers about his immigration status. *See id.* at 36. Also, even though Petitioner's spouse and adult children are located in Brazil, *id.* at 15-16, the record does not

13

suggest, nor do Respondents argue, that Petitioner poses a flight risk or is a danger to the public. Therefore, the Court finds that this factor weighs strongly in favor of a due process remedy for Petitioner.

### 2. Factor Two: Risk of Erroneous Deprivation

On the second factor, courts have recognized that "detention in the immigration context 'has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community.'" *Rashid*, 2025 WL 3210955, at *12 (quoting *Zadvydas*, 533 U.S. at 690); *see also Velasco Lopez*, 978 F.3d at 854 ("The Government has identified its regulatory interests in detaining noncitizens under § 1226(a) as (1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes"). A district court in this circuit has reasoned that continuous mandatory detention without a bond hearing does not violate due process as long as removal proceedings are progressing in some capacity and the delay is not unreasonable or unjustified. *See Ramos Funes v. Searls*, No. 19-CV-6332, 2020 WL 1956346, *18 (W.D.N.Y. Apr. 23, 2020). However, this Court joins the District of Vermont in respectfully disagreeing with that conclusion. Indeed, "without a bond hearing, there is no way to know if the detention has become unreasonable or unjustified." *Rashid*, 2025 WL 3210955, at *12. If the detention is erroneous, the seriousness of the deprivation increases with its duration. *See id.*

Again, the record does not suggest that Petitioner's continued detention without a bond hearing would serve either of the established detention objectives. The Court sees no indication that Petitioner has failed or will fail to appear at any immigration proceedings. As already discussed, DHS records show he was cooperative with officers when they arrested him in December 2025, and he was honest about his immigration status when asked. Furthermore, the

record does not indicate that Petitioner poses any safety risk to the public.  Aside from his status as an immigrant who entered the United States unlawfully, he has no criminal history.  Based on the record, he has lived in the United States without incident for nearly five years.  Accordingly, the Court determines that Respondents' continued detention of Petitioner—without so much as a bond hearing—creates a substantial risk of erroneous deprivation.

### 3. *Factor Three: Government's Interests*

As to the final *Mathews* factor, courts consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (citation omitted).  The Court acknowledges that "the Government has a legitimate interest in ensuring that noncitizens appear at their immigration proceedings and in preventing noncitizens from perpetrating harm in their communities during the pendency of their removal proceedings." *Rashid*, 2025 WL 3210955, at *13.  However, as the District of Vermont did in *Rashid*, this Court concludes that a bond hearing before an immigration judge would not diminish those interests.  *See id.*  Moreover, Petitioner's continued incarceration without a bond hearing to determine its reasonableness and justification risks wasting public resources "where [incarceration] serves no purpose." *Id.* (quoting *Black*, 103 F.4th at 154); *see also Velasco Lopez*, 978 F.3d at 854 ("[S]hifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose").  Accordingly, the Court finds that Respondents' interests under the third *Mathews* factor do not outweigh Petitioner's private interests or the risk of erroneous deprivation.

### 4. *Petitioner's Due Process Remedy*

15

Based on the *Mathews* analysis, the Court determines that Petitioner is due a bond hearing before an immigration judge.  This Court is not the first to permit a bond hearing even where § 1225(b)(1)(B)(ii) might apply.  *See, e.g.*, *Rashid*, 2025 WL 3210955, at \*16; *Djelassi*, 434 F. Supp. 3d at 923, 932.  The bond hearing would give Respondents the opportunity to show an immigration judge why Petitioner's detention is necessary to achieve the Government's regulatory objectives.  "Otherwise, 'the risk of an erroneous deprivation' of [Petitioner's] liberty interest would remain unacceptably high." *Black*, 103 F.4th at 155 (quoting *Mathews*, 424 U.S. at 335).

Because Petitioner will receive a bond hearing as his procedural due process remedy, the Court does not consider his alternative claim for relief under the Administrative Procedure Act, *see Demirel*, 2025 WL 3218243, at \*5.  "'Any person adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof, as long as the action is a final agency action for which there is no other adequate remedy in a court.'" *Afr. Cmtys. Together v. Lyons*, 799 F. Supp. 3d 362, 384 (S.D.N.Y. 2025) (quoting *Heckler v. Chaney*, 470 U.S. 821, 828 (1985)).  Also, in light of its decision, the Court need not discuss the substantive due process claim.  *See Maldonado*, 2025 WL 3731864, at \*2 n.3.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Respondents provide Petitioner a bond hearing consistent with this Memorandum-Decision and Order within fourteen (14) days; and the Court further

**ORDERS** that at the bond hearing, consistent with the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976), Respondents will have the burden of proving by clear and convincing evidence why Petitioner's detention is warranted; and the Court further

**ORDERS** that this Court's Temporary Restraining Order dated January 22, 2026 (Dkt. No. 3) is **DISSOLVED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 3, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge